No. 15-2525

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### METRO MACHINE CORP. d/b/a General Dynamics NASSCO-Norfolk and SIGNAL MUTIAL INDEMNITY ASSOC., LTD,

**Petitioners,**

v.

### JOHN D. STEPHENSON and
### DIRECTOR, OFFICE OF WORKERS' COMPENSATION
### PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

**Respondents.**

On Petition for Review of an Order of the Benefits
Review Board, United States Department of Labor

### BRIEF FOR THE FEDERAL RESPONDENT

**M. PATRICIA SMITH**
Solicitor of Labor

**RAE ELLEN JAMES**
Associate Solicitor

**MARK REINHALTER**
Counsel for Longshore

**SEAN G. BAJKOWSKI**
Counsel for Appellate Litigation

**MATTHEW W. BOYLE**
Attorney
U. S. Department of Labor
Office of the Solicitor
Suite N2117, 200 Constitution Ave. NW
Washington, D.C. 20210
(202) 693-5660
Attorneys for the Director, Office of
Workers' Compensation Programs

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ................................................................. iii

**STATEMENT OF JURISDICTION** ..................................................1

**ISSUE PRESENTED** ........................................................................3

**STATEMENT OF THE CASE** ..........................................................3

    **I.** STATUTORY BACKGROUND ......................................................3

        **A.** **Medical benefits** ..............................................................3

        **B.** **The section 20(a) presumption**...................................4

        **C.** **The definition of "injury"** ..........................................5

    **II.** FACTS......................................................................................7

    **III.** PROCEDURAL HISTORY .......................................................9

        **A.** **The Claims Examiner's Recommendation** ..................9

        **B.** **The ALJ's Decisions** .................................................10

        **C.** **The Board's Decision** ...............................................13

**SUMMARY OF ARGUMENT** .......................................................15

**STANDARD OF REVIEW** .............................................................17

**ARGUMENT** ...................................................................................18

    **I.** THE ALJ APPLIED THE PROPER LEGAL STANDARDS IN EVALUATING STEPHENSON'S CLAIM FOR MEDICAL BENEFITS RELATED TO HIS T7 FRACTURE ...............................................................................19

i

**A.** **<u>Secondary injuries arising naturally or unavoidably from workplace injuries are compensable under the Longshore Act</u>** ......19

**B.** **<u>The section 20(a) presumption attaches to all Longshore Act claims, including claims based on consequential injuries</u>**...............20

**1.** The Fifth Circuit's *Hess* and *Vickers* decisions are wrongly decided because they conflict with the plain language of section 20(a) ...........................................................................22

**2.** The *Hess* and *Vickers* decisions are also inapposite because, unlike Stephenson, the claimants in those cases did not make effective claims for compensation based on a secondary injury .......................................................24

**3.** The Supreme Court's *U.S. Industries* decision says nothing about whether the section 20(a) presumption applies to secondary injuries because there was no secondary injury in that case ........................................19

**II.** THE ALJ DID NOT RELY ON DR. RIPOLL'S OPINIONS FOR INVOCATION OF THE PRESUMPTION WITH REGARD TO STEPHENSON'S COPD ..............30

**CONCLUSION**...........................................................................32

**CERTIFICATE OF SERVICE** .................................................33

**CERTIFICATE OF COMPLIANCE** ................................................33

# TABLE OF AUTHORITIES

**Cases**:                                                                 Page

*Admiralty Coatings Corp. v. Emery*,
   228 F.3d 513 (4th Cir. 2000)..................................................................5

*Albina Engine & Machine v. Director, OWCP*,
   627 F.3d 1293 (9th Cir. 2010)................................................................22

*Amerada Hess Corp. v. Director, OWCP*,
   543 F.3d 755 (5th Cir. 2008)........................................................ passim

*Bath Iron Works Corp. v. Director, OWCP*,
   109 F.3d 53 (1st Cir. 1997) ..........................................................21, 22

*Bludworth Shipyard, Inc. v. Lira*,
   700 F.2d 1046 (5th Cir. 1983)................................................................6

*Christensen v. Harris County*,
   529 U.S. 576 (2000)..............................................................................18

*Clinchfield Coal Co. v. Cox*,
   611 F.2d 47 (4th Cir. 1979)..................................................................18

*Cyr v. Crescent Wharf & Warehouse Co.*,
   211 F.2d 454 (9th Cir. 1954)..................................................................6

*Dangerfield v. Todd Pacific Shipyards Corp.*,
   22 BRBS 104 (1989) ............................................................................26

*Director, OWCP v. Newport News Shipbuilding & Dry Dock Co.*,
   138 F.3d 134 (4th Cir. 1998)..................................................................5

*Gilchrist v. Newport News Shipbuilding & Dry Dock Co.*,
   135 F.3d 915 (4th Cir. 1998)................................................................17

*Humphries v. Director, OWCP*,
   834 F.2d 372 (4th Cir. 1987)................................................................17

**Cases--cont'd:**                                                                Page

*Ins. Co. of the State of Pennsylvania v. Director, OWCP [Vickers]*,
713 F.3d 779 (5th Cir. 2013) ........................................................ passim

*J.V.Vozzolo, Inc. v. Britton*,
377 F.2d 144 (D.C. Cir. 1967) ................................................. 6, 18, 20

*Jones v. Director, OWCP*,
977 F.2d 1106 (7th Cir. 1992)........................................................6, 21

*Lane Hollow Coal Co. v. Director, OWCP*,
137 F.3d 799 (4th Cir. 1998)...................................................... 19, 20

*Meehan Seaway Service Co. v. Director, OWCP*,
125 F.3d 1163 (8th Cir. 1997)..............................................................26

*Mikell v. Savannah Shipyard Co.*,
24 BRBS 32 (1992), *aff'd mem. sub nom.*,
*Argonaut Ins. Co. v. Mikell,* 14 F.3d 58 (11th Cir. 1994) ...................................26

*Newport News Shipbuilding & Dry Dock Co. v. Fishel*,
694 F.2d 327 (4th Cir. 1982)...........................................................5, 18

*Newport News Shipbuilding & Dry Dock Co. v. Tann*,
841 F.2d 540 (4th Cir. 1988)..............................................................17

*Newport News Shipbuilding and Dry Dock Co. v. Holiday*,
591 F.3d 219 (4th Cir. 2009).................................................... 5, 18, 21

*Norfolk Shipbuilding and Drydock Corp. v. Faulk*,
228 F.3d 378 (4th Cir. 2000)..............................................................22

*Pool Co. v. Cooper*,
274 F.3d 173 (5th Cir. 2001).............................................................26

*Port Cooper/T. Smith Stevedoring Co., Inc. v. Hunter*,
227 F.3d 285 (5th Cir. 2000)................................................................4

**Cases--cont'd:** Page

*Rainey v. Director, OWCP,*
  *OWCP,* 517 F.3d 632 (2d Cir. 2008) ..................................................22

*Ramsay Scarlett & Co. v. Director, OWCP,*
  806 F.3d 327 (5th Cir. 2015)...........................................................22

*Richardson v. Newport News Shipbuilding & Dry Dock Co.,*
  39 BRBS 74 (2005), *aff'd mem. sub nom.*, *Newport News Shipbuilding*
  *& Dry Dock Co. v. Director, OWCP*, 245 F.Appx. 249 (4th Cir. 2007)..............22

*Riley v. U.S. Industries/Federal Sheet Metal, Inc.,*
  627 F.2d 455 (D.C. Cir. 1980) ..........................................................28

*Skidmore v. Swift & Co.,*
  323 U.S. 134 (1944) ....................................................................18

*U.S. Industries/Federal Sheet Metal, Inc. v. Director, OWCP,*
  455 U.S. 608 (1982) .............................................................. passim

*Universal Maritime Corp. v. Moore,*
  126 F.3d 256 (4th Cir. 1997)........................................................4, 31

*Varney v. Secretary of Health and Human Services,*
  859 F.2d 1396 (9th Cir. 1988).........................................................20

*W. Virginia CWP Fund v. Stacy,*
  671 F.3d 378 (4th Cir. 2011)..........................................................18

**Statutes**:

Black Lung Benefits Act,
  30 U.S.C. §§ 901-944 (2000)..........................................................18
  30 U.S.C. § 932(a).....................................................................18

Longshore and Harbor Workers' Compensation Act,
  33 U.S.C. §§ 901-950 (2000)...........................................................1

**Statutes--cont'd:** Page

33 U.S.C. § 902(2) ........................................ 5, 6, 18, 19

33 U.S.C. § 907(a) ...............................................4, 21

33 U.S.C. § 919(c), (d) ..............................................2

33 U.S.C. § 920 ..................................................3, 4

33 U.S.C. § 920(a) ........................................... passim

33 U.S.C. § 921(a) ..................................................2

33 U.S.C. § 921(b)(3) ...........................................2, 17

33 U.S.C. § 921(c) ..................................................2

**Rules**:

Fed. R. App. P. 32(a)(7)(C) .......................................33

**Miscellaneous**:

*Amerada Hess Corp. v. Director, OWCP*,
  Petitioner's Brief, 2007 WL 6179895...............................24

Farlex and Partners Medical Dictionary (2009). ......................7

Gale Encyclopedia of Medicine (3d ed. 2006). .......................7

Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law
  § 10.01 (2013) ...................................................6

The American Heritage Medical Dictionary (Updated ed. 2007). ...........7

The Merck Manual 1889 (19th ed. 2011). ..............................7

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

No. 15-2525
_____

METRO MACHINE CORP., et al.

Petitioners,

v.

JOHN D. STEPHENSON

and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,

Respondents.
_____

On Petition for Review of an Order of the Benefits
Review Board, United States Department of Labor
_____

BRIEF FOR THE FEDERAL RESPONDENT, DIRECTOR, OWCP
_____

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This case concerns a claim for compensation under the Longshore and

Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950 (Longshore Act or

Act) filed by Respondent John D. Stephenson (Claimant or Stephenson) who was

injured while employed by Metro Machine Corporation (Employer). The Office of

1

Administrative Law Judges had jurisdiction over the claim under 33 U.S.C. § 919(c), (d). On August 14, 2014, administrative law judge Kenneth A. Krantz issued an Order Granting Claimant's Motion for Reconsideration. Joint Appendix (JA) 210. That decision became effective when it was filed in the office of the District Director on August 20, 2014. JA 207; *see* 33 U.S.C. § 921(a).

The Employer filed a Notice of Appeal with the Benefits Review Board (Board) on September 5, 2014, within the thirty-day period provided by 33 U.S.C. § 921(a). JA 4. That appeal invoked the Board's review jurisdiction pursuant to 33 U.S.C. § 921(b)(3). The Board affirmed the ALJ's award, and issued a final Order on Motions for Reconsideration and for Attorney's Fees on November 3, 2015. JA 226.

The Employer was aggrieved by the Board's decisions, and filed a petition for review with this Court on December 9, 2015, within the sixty days allowed by 33 U.S.C. § 921(c). JA 230. Court of appeals jurisdiction lies in the circuit in which the injury occurred. 33 U.S.C. § 921(c). Stephenson's injury occurred in Virginia, within this Court's territorial jurisdiction. Accordingly, this Court has jurisdiction over this petition for review.

2

## ISSUE PRESENTED

Section 20(a) of the Longshore Act provides: "In any proceeding for the enforcement of a claim for compensation under this Act it shall be presumed, in the absence of substantial evidence to the contrary – [t]hat the claim comes within the provisions of this Act." 33 U.S.C. § 920. In 2008, Stephenson was exposed to welding fumes at work, which aggravated his pre-existing chronic obstructive pulmonary disease (COPD). The Employer paid for the resulting hospitalization, and compensated Stephenson for temporary disability. In 2012, Stephenson claimed medical benefits for treatment he alleged was related to the 2008 injury. Specifically, he sought payment by the Employer for the continuing treatment of his COPD, and for a fractured vertebra that his doctor attributed to steroid treatments and coughing related to his COPD. Did the ALJ correctly find that the section 20(a) presumption attached to Stephenson's 2012 claim for medical benefits?

## STATEMENT OF THE CASE

### I.    STATUTORY BACKGROUND

#### A.    <u>Medical benefits</u>

The Longshore Act provides a comprehensive workers' compensation system for maritime employees. Like most such systems, the Act provides for both disability and medical benefits, only the latter of which is relevant to this case.

3

Section 7(a) of the Longshore Act provides that "[t]he employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require."  33 U.S.C. § 907(a).

### B.    The section 20(a) presumption

Section 20(a) of the Act provides: "In any proceeding for the enforcement of a claim for compensation under this Act it shall be presumed, in the absence of substantial evidence to the contrary – [t]hat the claim comes within the provisions of this Act."  33 U.S.C. § 920.  "The presumption is a broad one, and advances the facility with which claims are to be treated to further the Act's purpose of compensating injured workers regardless of fault."  *Universal Maritime Corp. v. Moore*, 126 F.3d 256, 262 (4th Cir. 1997).  "[A]n employee seeking to have the benefit of the presumption must first allege (1) an injury or death (2) that arose out of and in the course of (3) his maritime employment."  *Id.* at 262; *see Port Cooper/T. Smith Stevedoring Co., Inc. v. Hunter*, 227 F.3d 285, 287 (5th Cir. 2000) ("To invoke the Section 920(a) presumption, a claimant must prove (1) that he or she suffered harm, and (2) that conditions existed at work, or an accident occurred at work, that could have caused, aggravated, or accelerated the condition.").

If the claimant makes out that prima facie case, the burden shifts to the employer to rebut the presumption with substantial evidence that the claimant's

condition was not caused or aggravated by his employment.  For an alleged

aggravation of a previous injury, the employer may rebut with substantial evidence

that the injury is a natural outgrowth of an existing condition, rather than the result

of the workplace injury.  *Newport News Shipbuilding and Dry Dock Co. v.*

*Holiday*, 591 F.3d 219, 225 (4th Cir. 2009) (citing *Admiralty Coatings Corp. v.*

*Emery*, 228 F.3d 513, 517–18 (4th Cir. 2000); and *Director, OWCP v. Newport*

*News Shipbuilding & Dry Dock Co.*, 138 F.3d 134, 138 (4th Cir. 1998)).

### C.    The definition of "injury"

The Act defines "injury," in pertinent part, as "accidental injury or death

arising out of and in the course of employment, and such occupational disease or

infection as arises naturally out of such employment or as naturally or unavoidably

results from such accidental injury[.]"  33 U.S.C. § 902(2).  An injury "can be

either a new harm, or the aggravation of an existing condition."  *Holiday*, 591 F.3d

at 225 (citing *Newport News Shipbuilding & Dry Dock Co. v. Fishel*, 694 F.2d 327,

329 (4th Cir. 1982)); *see* Emper's Brf. at 26 ("Under the LHWCA, an 'injury' can

be either a new harm, or the aggravation of an existing condition.").

Both primary injuries "arising out of and in the course of employment" and

secondary (or "consequential") injuries that "naturally or unavoidably result[]'

from a primary injury are covered by this definition.  While the Act explicitly

refers to only one type of secondary injury – an "occupational disease or infection

. . . [that] naturally or unavoidably results" from a primary injury – the courts have

applied the same "naturally or unavoidably" test to other secondary injuries.  *See,*

*e.g.*, *Cyr v. Crescent Wharf & Warehouse Co.*, 211 F.2d 454, 456 (9th Cir. 1954)

(the "naturally or unavoidably" language of section 902(2) covers injuries that

happen after the primary injury); *Jones v. Director, OWCP*, 977 F.2d 1106 (7th

Cir. 1992) (applying "naturally or unavoidably" language to consequential injury);

*J.V.Vozzolo, Inc. v. Britton*, 377 F.2d 144, 150 n.26 (D.C. Cir. 1967) (additional

injury that is a natural result of the original injury is compensable); *Bludworth*

*Shipyard, Inc. v. Lira*, 700 F.2d 1046, 1051 (5th Cir. 1983) ("When the primary

injury is shown to have arisen out of and in the course of employment, every

natural consequence that flows from the injury likewise arises out of the

employment, unless it is the result of an independent intervening cause attributable

to claimant's own intentional conduct.") (quotation omitted); Arthur Larson & Lex

K. Larson, Larson's Workers' Compensation Law § 10.01 (2013) ("The basic rule

is that a subsequent injury, whether an aggravation of the original injury or a new

and distinct injury, is compensable if it is the direct and natural consequence of a

compensable primary injury.").

   The Employer does not challenge these precedents applying the "naturally or

unavoidably" test to secondary injuries.  To the contrary, it complains that the ALJ

did not apply that test explicitly enough to Stephenson's secondary-injury claim. *See* Emper's Brf. at 16-17; *infra* at 19.

## II.    FACTS

Stephenson worked as a pipefitter for the Employer in Norfolk, Virginia.  JA 11.  The Employer reported that, on February 18, 2008, Stephenson was exposed to welding fumes, injuring his lungs.  JA 7.  The next morning, he was admitted to the hospital emergency room and diagnosed with an exacerbation of his pre-existing chronic obstructive pulmonary disease (COPD).  JA 217; Supplemental Joint Appendix (SJA) 1.[1]  He was hospitalized for eight days, during which time he was prescribed steroids, inhalers, antibiotics, and albuterol to treat his COPD. JA 147; SJA 1.  When he was released from the hospital, he was placed on a nebulizer and an oxygen concentrator, neither of which he had used before his hospitalization.  JA 147-48.[2]  The Employer paid Stephenson compensation for temporary total disability from February 19, 2008,  through August 3, 2008, and for temporary partial disability from September 16, 2009, through September 29,

---

[1] COPD is a lung disease characterized by airflow obstruction. *The Merck Manual* 1889 (19th ed. 2011).

[2] A "nebulizer" is "[a] device that turns liquid forms of medicine into a fine spray that can be inhaled."  Gale Encyclopedia of Medicine (3d ed. 2006).  An "oxygen concentrator" is "[a] device used for home oxygen therapy that removes most of the nitrogen from room air and delivers the oxygen at a low flow rate."  Farlex and Partners Medical Dictionary (2009).

2009.  JA 8.  He returned to work but was restricted from going on board ship.  JA 175.  He voluntarily retired in early 2011.  *Id.*

In October 2011, after he retired, Stephenson was treated for back pain "mainly attributed to severe cough and expansion of the chest secondary to chronic obstructive pulmonary [disease], emphysema, and inhaling fumes during the course of his employment."  SJA 8.  He was diagnosed with a compression fracture of the seventh thoracic (or "T7") vertebra.  SJA8, 12.[3]  The treating physician stated that the fracture was due to Stephenson's excessive coughing as well as his long-term steroid use to treat his respiratory condition.  SJA 8, 15.

Stephenson requested that the Employer pay for treatments related to his ongoing COPD and his T7 fracture.  The Employer refused, and on March 15, 2012, filed a notice of controversion asserting that the treatment was not related to the 2008 workplace incident.  JA 9; *see* Emper's Brf. at 2.  On March 30, 2012, Stephenson filed a claim for compensation.  JA 11.  He indicated that he had been exposed to fumes on February 18, 2008, and had received medical treatment from Dr. Alireza Jamali, who treated his T7 fracture in 2011.

---

[3] A "compression fracture" is "[a] fracture caused by the compression of one bone, especially a vertebra, against another."  The American Heritage Medical Dictionary (Updated ed. 2007).

### III.   PROCEDURAL HISTORY

### A.     The Claims Examiner's Recommendation

The claims examiner held an informal conference on May 15, 2012, and issued two memoranda memorializing that conference.  JA 12-14, 15-16.  The memoranda indicate that Stephenson sought medical benefits for the treatment of: (1) his ongoing chronic obstructive pulmonary disease (COPD); and (2) a fractured T7 vertebra.  JA 12, 15.  The claims examiner recommended the payment of benefits for both.  With regard to the vertebral fracture, she relied on the diagnosis of Dr. Jamali, who wrote in a February 7, 2012 medical report:

> Please be advised that Mr. Stephenson had a fracture of the 7th of the thoracic vertebra.  He required long-term intake of steroid for management of his respiratory condition.  That has contributed to osteoporosis and pathological fracture of T7.  I believe this fracture is directly due to long-term steroid intake.

JA 15; SJA 15.  The claims examiner found that the employer failed to refute Dr. Jamali's opinion with sufficient medical evidence.  *Id.*

The claims examiner also recommended payment of medical benefits for Stephenson's COPD.  She relied on the January 2012 opinion of Dr. Ignacio Ripoll that Stephenson's ongoing treatment was due to both his pre-existing lung maladies and his workplace exposure to fumes in 2008, but that Stephenson "had more symptoms after the [2008] exposure therefore I can state with a reasonable degree of medical certainty that the exposure led to a worsening of his pulmonary

9

condition." JA 16. Finding that the Employer did not submit evidence to refute Dr. Ripoll's opinion, the claims examiner recommended payment of medical benefits for Stephenson's COPD.[4] The Employer sought a hearing before an administrative law judge. JA 21.

## B.    The ALJ's Decisions

The ALJ held a hearing on September 25, 2013, and issued a Decision and Order Granting Benefits on February 26, 2014, JA 190, and an Order Granting Claimant's Motion for Reconsideration on August 14, 2014, JA 210. The first order addressed only Stephenson's claim for COPD, while the second addressed his claim for a fractured vertebra.

The parties stipulated that Stephenson's 2008 lung injury arose out of and in the course of his employment and was covered by the Longshore Act. JA 191. With regard to Stephenson's COPD, the ALJ found that Stephenson was entitled to the section 20(a) presumption. First, the ALJ found that Stephenson had established a prima facie case, showing both that a harm (COPD) had occurred, and that the 2008 work incident (exposure to welding fumes) could have caused

---

[4] After the conference, the claims examiner held her recommendation in abeyance until June 1, 2012 so the Employer could get an updated opinion from Dr. Ripoll. JA 13. No such opinion was provided by October 2, 2012, when the claims examiner issued her recommendation. JA 15. On November 20, 2012, the Employer submitted an additional report from Dr. Ripoll, dated July 16, 2012. JA 17-19. Because the claims examiner had already issued her recommendation, she did not consider it. The ALJ, however, did consider it. JA 205.

that harm or aggravated a pre-existing condition. He found that the "Claimant has demonstrated and Employer agreed that a work related injury occurred February 18, 2008 when Claimant was exposed to welding and epoxy fumes, leading to an aggravation of his preexisting COPD." JA 203.

The ALJ found that the Employer, relying on treatment records and the opinions of Dr. Ripoll, had failed to rebut the presumption. The ALJ noted that Stephenson's treatment records showed an ongoing decline in his respiratory function after 2008, but that the records did not address the cause of that decline. He found, therefore, that the Employer could rebut the presumption only on the basis of Dr. Ripoll's opinions. But he found that Dr. Ripoll's opinions were equivocal as to whether claimant's respiratory problems were an ongoing aggravation of his COPD due to the 2008 workplace incident or a natural progression of the disease. JA 205. In January 2012, the doctor opined that Stephenson's COPD was still aggravated by the 2008 exposure, JA 118-19;[5] in July 2012, he reversed his opinion to find a natural progression of the disease, JA 124-25; in November 2012, he reversed position again, JA 126-27; and at his May 2013 deposition, he essentially stated that he could not be certain, JA 56-60, 68-69,

---

[5] The ALJ's decision incorrectly cites the date of this opinion as January 2010. JA 205.

11

75.  JA 205.[6]  "Although Dr. Ripoll's opinion as a whole appears to support an ongoing aggravation, it remains uncertain and is apparently based on the slope of a graph [illustrating Stephenson's lung function over time] Dr. Ripoll himself states is inadequate.  This administrative law judge finds Dr. Ripoll's opinion entitled to little weight and so insufficient to rebut the presumption."  *Id.*

In his second order, the ALJ found that Stephenson established a prima facie case with regard to his T7 fracture by linking it to his use of prescription steroids and excessive coughing stemming from his work-related COPD.  JA 214.  The ALJ based this finding on the opinions of Dr. Jamali.  On October 5, 2011, Dr. Jamali noted that Stephenson had a compression fracture of the T7 vertebra which was "most likely due to excessive coughing."  JA 212 (citing EX 6 at 4, which is also SJA 8).  On February 7, 2012, he opined that the "fracture is directly due to long-term steroid intake."  JA 213 (SJA 15).

The ALJ also found that the Employer failed to rebut the presumption by presenting evidence that the fracture was not caused, aggravated, or accelerated by the 2008 workplace injury, and awarded medical benefits for the fracture.  He found that, although the Employer argued that Stephenson had used steroids before the 2008 workplace incident, "such an observation does not constitute substantial countervailing evidence that the workplace injury did not cause, aggravate, or

---

[6] Only the January 2012 opinion was available to the claims examiner at the time of the May 2012 informal conference.

12

accelerate the fracture." JA 215. He rejected the Employer's contention that

application of the section 20(a) presumption to Stephenson's claim for his T7

fracture should be controlled by Fifth Circuit precedent, noting that this case arose

in the Fourth Circuit. JA 215 n.1; *see infra* at 14-15, 22-27.

### C.     <u>The Board's Decision</u>

The Employer appealed to the Benefits Review Board, which affirmed the

ALJ's decisions. JA 216. With regard to Stephenson's COPD, the Employer

argued that the ALJ erred in finding that Stephenson made out a prima facie case

under section 20(a). Specifically, the Employer argued that it had stipulated only

that the 2008 exposure injured Stephenson's pulmonary organs, while the ALJ

found that it had stipulated to aggravating Stephenson's COPD.[7] JA 218. It also

argued that, because Dr. Ripoll's medical opinion was equivocal as to whether the

2008 exposure contributed to Stephenson's COPD, Stephenson could not have

established his prima facie case under section 20(a). *Id*.

The Board disagreed. It ruled that Stephenson was not required to present a

medical opinion directly linking his COPD to the work accident in order to meet

his prima facie case. JA 218-19. The Board upheld the ALJ's findings that (1)

Stephenson had established a harm (his COPD) and (2) "the employer stipulated,

---

[7] It is not clear that the ALJ actually found that the Employer stipulated to an
aggravation of COPD. It appears, rather, that he found the Employer stipulated to
the 2008 fume exposure, and also found (independent of the stipulation) that the
exposure had aggravated Stephenson's COPD. *See* JA 203, 211.

13

and claimant demonstrated, that he was exposed to welding epoxy fumes at work on February 18, 2008[,]" which could have aggravated the COPD.[8]  JA 218-19 and n.3 (*see* JA 191).  The Board found, therefore, that Stephenson had invoked the section 20(a) presumption.  JA 218-19.

The Board also agreed with the ALJ that the Employer had failed to rebut the presumption.  It noted that "the only medical evidence addressing causation and/or aggravation is Dr. Ripoll's opinion."  Because the ALJ found that opinion to be equivocal, and the Employer conceded that it was appropriately discounted on that basis, the Board found the Employer had not rebutted the presumption.  JA 219-20.

Addressing Stephenson's T7 fracture, the Board rejected the Employer's argument that the ALJ should have relied on *Amerada Hess Corp. v. Director, OWCP*, 543 F.3d 755 (5th Cir. 2008), to find that the section 20(a) presumption does not apply to secondary injuries like Stephenson's T7 fracture.  JA 220.  The Board found *Hess* inapplicable not only because it arose outside of the Fourth Circuit, but also because Stephenson, unlike the claimant in *Hess*, "sufficiently

_____

[8] The Board also noted that, while Dr. Ripoll's opinion was equivocal, it nonetheless supported Stephenson's allegations that his exposure to fumes "could have aggravated" his COPD.  JA 219.  As noted above, however, the ALJ did not rely on Dr. Ripoll's opinions for invocation of the presumption. *See supra* at 11; *see also infra* at 30-31.  Moreover, the Board held that the presumption had been invoked without the use of Dr. Ripoll's opinion.  JA 218-19.

14

made a claim" for his T7 fracture "before both the district director and the administrative law judge." JA 221.[9] The Employer, moreover, did not contend that it was surprised by the claim, had insufficient notice of it, or was hindered in its defense of the claim. *Id*. (citing *U.S. Industries/Federal Sheet Metal, Inc. v. Director, OWCP*, 455 U.S. 608, 613 n.7 (1982)). The Board thus concluded that the ALJ had properly applied the section 20(a) presumption to the fracture, and affirmed the ALJ's award of medical benefits.

## SUMMARY OF THE ARGUMENT

The Employer makes two arguments that relate to the section 20(a) presumption. First, that the ALJ should not have applied the section 20(a) presumption to the part of the claim based on Stephenson's T7 fracture. And second, that the ALJ improperly applied the presumption in evaluating Stephenson's COPD claim. With regard to the first argument, the ALJ correctly

---

[9] As explained in more detail *infra* at 22-26, the *Hess* claimant was compensated for a workplace back injury, and later sought medical benefits for a heart condition he alleged arose from the steroid injections he received in the treatment of that back injury. The court held that, because the heart condition was not claimed, and did not arise during employment, the claimant had to establish a causal relationship between his employment and heart condition without the benefit of the section 20(a) presumption, by establishing with medical evidence that the heart condition resulted "naturally or unavoidably" from the work-related injury or treatment. *Hess*, 543 F.3d at 761-62. It remanded for the application of that standard. *See also Ins. Co. of the State of Pennsylvania v. Director, OWCP [Vickers]*, 713 F.3d 779 (5th Cir. 2013).

15

found that the section 20(a) presumption attached to Stephenson's claim for medical benefits related to his T7 fracture, because the presumption attaches to any claim for compensation. This Court should not adopt the contrary reasoning employed by the Fifth Circuit in *Hess* and *Vickers* because those cases were wrongly decided. The Fifth Circuit held that the section 20(a) presumption applies to claims based on direct injuries arising out of and in the course of a worker's employment, but not to those based on secondary injuries that naturally or unavoidably result from a primary injury. This is wrong because there is no basis in section 20(a) – or the Act generally – to withhold the presumption based on the type of injury the claimant alleges in his claim. Moreover, *Hess* and *Vickers* are inapposite here because the key factor the courts relied on to withhold the presumption was that the claimant did not make a claim based on the consequential injury for which he was seeking compensation. Here, by contrast, Stephenson claimed benefits based specifically on both his COPD aggravation and his T7 fracture.

The Supreme Court's decision in *U.S. Industries* is similarly inapplicable because it did not involve a consequential injury. Indeed, the ALJ in that case found that there was not even a primary injury, so there could not have been a consequential injury. The Court held only that a nonwork injury – one that did not occur in the course of employment and could not be traced to one that had – was

not entitled to the section 20(a) presumption.  Where, as here, there is an undisputed workplace injury, *U.S. Industries* simply does not apply.

The ALJ also correctly applied the section 20(a) presumption in evaluating Stephenson's COPD claim.  Contrary to the Employer's suggestion, the ALJ did not find Dr. Ripoll's opinion sufficiently credible to invoke the presumption but not to rebut it.  In fact, he did not rely on Dr. Ripoll's opinion at all for invocation, but on other substantial evidence.  The decisions below should be affirmed.

## STANDARD OF REVIEW

The Court reviews the Board's decision for errors of law and to determine whether the Board adhered to its standard of review.  *See Newport News Shipbuilding & Dry Dock Co. v. Tann*, 841 F.2d 540, 543 (4th Cir. 1988).  The Board's standard of review requires that the ALJ's findings of fact be considered "conclusive if supported by substantial evidence in the record considered as a whole."  *Newport News Shipbuilding and Dry Dock Co. v. Director, OWCP*, 131 F.3d 1079, 1080 (1997) (quoting 33 U.S.C. § 921(b)(3)).  On questions of law, including interpretations of the Longshore Act, this Court exercises de novo review.  *See Humphries v. Director, OWCP*, 834 F.2d 372, 374 (4th Cir. 1987).  The Board's statutory interpretations are not entitled to deference, *Gilchrist v. Newport News Shipbuilding & Dry Dock Co.*, 135 F.3d 915, 918 (4th Cir. 1998).  The Court owes some deference to the Director "because of his policy-making

17

authority with regard to the Act." *Moore*, 126 F.3d at 268. When—as here—the

Director's position is being advanced in litigation, it is "'entitled to respect' . . . to

the extent that [it has] the 'power to persuade[.]'" *W. Virginia CWP Fund v. Stacy*,

671 F.3d 378, 388 (4th Cir. 2011), *as amended* (Dec. 21, 2011) (deferring to

Director's construction of the Black Lung Benefits Act)[10] (quoting *Christensen v.*

*Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323

U.S. 134, 140 (1944)).

## ARGUMENT

The Act recognizes at least two types of compensable injuries: direct (or

primary) injures "arising out of and in the course of employment" and secondary

(or consequential) injuries that "naturally or unavoidably result[]" from such a

direct injury. 33 U.S.C. § 902(2). Stephenson's COPD is a primary injury; it

occurred in the course of his employment on February 18, 2008, when he was

exposed to welding fumes at work that aggravated his preexisting COPD.[11]

---

[10] The Black Lung Benefits Act, 30 U.S.C. §§ 901-944, incorporates much of the
Longshore Act, including its claim adjudication provisions. 30 U.S.C. § 932(a); *see*
*Clinchfield Coal Co. v. Cox*, 611 F.2d 47, 48 (4th Cir. 1979).

[11] *See Holiday*, 591 F.3d at 225 (citing *Newport News Shipbuilding & Dry Dock Co.*
*v. Fishel,* 694 F.2d 327, 329 (4th Cir.1982) (Longshore Act injury "can be either a
new harm, or the aggravation of an existing condition."); *Fishel*, 694 F.2d at 330
("*[B]enefits under the Act are not limited to employees who happen to enjoy good*
*health*; rather, employers accept with their employees the frailties that predispose
them to bodily hurt.") (quoting *J.V. Vozzolo, Inc. v. Britton*, 377 F.2d 144, 147 (D.C.
Cir. 1964)).

Stephenson's T7 fracture, by contrast, cannot be a direct injury because it did not occur in the course of his employment. Therefore, as the Employer correctly recognizes, Emper's Brf. at 11, it is compensable only if it resulted "naturally or unavoidably" from his COPD (which, in turn, arose out of his workplace exposure to fumes in 2008). 33 U.S.C. § 902(2).

## I. THE ALJ APPLIED THE PROPER LEGAL STANDARDS IN EVALUATING STEPHENSON'S CLAIM FOR MEDICAL BENEFITS RELATED TO HIS T7 FRACTURE.

### A. Secondary injuries arising naturally or unavoidably from workplace injuries are compensable under the Longshore Act.

The Employer's first attack on the award is that the ALJ's supplemental opinion awarding medical benefits for Stephenson's T7 fracture does not contain an explicit statement declaring that the fracture was a "natural or unavoidable" result of the Stephenson's COPD. Emper's Brf. at 16-17. But the Employer cites no authority for the proposition that ALJs in Longshore Act proceedings must use such precise wording in their decisions. To the contrary, the general rule is that an ALJ's decision is sufficiently clear so long as a reviewing court "can see what the ALJ did and why he did it." *Lane Hollow Coal Co. v. Director, OWCP*, 137 F.3d 799, 803 (4th Cir. 1998).

The ALJ's reasoning on the issue is perfectly clear. He credited Dr. Jamali's opinion that "features of [Stephenson's] COPD, namely steroid treatment and excessive coughing, caused the T7 fracture." JA 214. This testimony established,

19

to the ALJ's satisfaction, that Stephenson had "demonstrated a harm, namely a fracture of the T7 vertebra" and a primary injury or "workplace accident" (Stephenson's exposure to fumes that aggravated his COPD) that "could have caused, aggravated, or accelerated the condition." *Id.* This was sufficient to invoke the section 20(a) presumption that Stephenson's claim for medical treatment expenses related to the T7 fracture was covered by the Act. The presumption carried the day because the "Employer did not present evidence that Claimant's T7 vertebra fracture was not caused, aggravated, or accelerated by the February 18, 2008 workplace exposure." *Id.* at 215. Instead, the Employer argued that the 20(a) presumption did not apply to secondary injuries like the T7 claim— an argument the ALJ correctly rejected. *Id.; see infra* at 22-26.

It is clear that the ALJ (and the Board, which described it as a secondary injury, JA 221) knew that Stephenson's T7 fracture did not itself arise in the course of employment, and that Stephenson was not arguing that it had, but rather that it resulted from the effects and treatment of his 2008 workplace injury. Consequently, there is no need to remand the case for the ALJ to add an explicit statement that the T7 fracture was a natural result of Stephenson's COPD. *See Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988) (remand for further proceedings unnecessary where record is fully developed and further proceedings would not alter the court's decision).

**B.  The section 20(a) presumption attaches to all Longshore Act claims, including claims based on consequential injuries.**

The Employer's second argument is that Stephenson's claim for medical treatment related to his T7 fracture is not entitled to the section 20(a) presumption because that presumption applies only to direct injuries, not consequential ones. Emper's Brf. at 18.  But the premise of that argument is undermined by the plain language of the statute.  Section 20(a) does not presume that "direct injuries" or "injuries arising out of and in the course of the claimant's employment" are covered by the Act.  In fact, the provision says nothing at all about injury.  Rather, it presumes that – "[i]n *any* proceeding for the enforcement of a claim for compensation under this Act" – "*the claim* comes within the provisions of this Act."  33 U.S.C. § 920(a) (emphasis added).[12]

The Employer's theory that the presumption does not apply to injuries that result "naturally or unavoidably" from a primary workplace injury is contrary not only to the statute, but also to the great weight of the case law.  Indeed, the courts have routinely applied the section 20(a) presumption in claims based on occupational diseases which, like secondary injuries, must arise "naturally or

---

[12] This includes claims for medical benefits as well as claims for disability compensation.  *See, e.g., Bath Iron Works Corp. v. Director, OWCP*, 109 F.3d 53 (1st Cir. 1997) (applying 20(a) presumption to claim for medical benefits), *cited approvingly in Holiday*, 591 F.3d at 226.  As noted above, employers are obligated by 33 U.S.C. § 907(a) to pay for medical treatment necessitated by covered injuries. *See Jones*, 977 F.2d at 1110.

21

unavoidably" from a workplace injury or exposure in order to be covered by the Act.  *See, e.g., Norfolk Shipbuilding and Drydock Corp. v. Faulk*, 228 F.3d 378 (4th Cir. 2000) (presumption applied in mesothelioma claim); *Albina Engine & Machine v. Director, OWCP*, 627 F.3d 1293 (9th Cir. 2010) (same); *Bath Iron Works*, 109 F.3d 53 (1st Cir. 1997) (presumption applied in asbestosis claim); *Ramsay Scarlett & Co. v. Director, OWCP*, 806 F.3d 327 (5th Cir. 2015) (same); *Rainey v. Director, OWCP,* 517 F.3d 632 (2d Cir. 2008) (presumption applied in lung cancer claim); *Richardson v. Newport News Shipbuilding & Dry Dock Co.*, 39 BRBS 74 (2005), *aff'd mem. sub nom.*, *Newport News Shipbuilding & Dry Dock Co. v. Director, OWCP*, 245 F.Appx. 249 (4th Cir. 2007) (presumption applied in COPD claim).

> ## 1. The Fifth Circuit's *Hess* and *Vickers* decisions are wrongly decided because they conflict with the plain language of section 20(a).

The Employer gives no explanation why the presumption should not apply to acute secondary injuries result naturally or unavoidably from workplace injuries when it clearly applies to occupational diseases that result naturally or unavoidably from workplace injuries.  It relies instead on two divided decisions by the Fifth Circuit: *Hess*, 543 F.3d at 758 (holding that presumption did not attach to heart condition alleged to have resulted from treatment of workplace back injury); and

*Vickers*, 713 F.3d at 785 (no presumption for gastrointestinal and autoimmune problems alleged to have resulted from a workplace arm injury).

To the extent that *Hess* and *Vickers* stand for the proposition that the section 20(a) presumption does not apply to claims based on secondary injuries that result naturally or unavoidably from direct workplace injuries, they were wrongly decided. Like the Employer's brief, they fail to explain why the presumption should be limited to any subset of Longshore Act-covered injuries when section 20(a) itself makes no reference to injury, but only to claims for compensation generally. Nor do they explain how their conclusion squares with the fact that the presumption applies in occupational disease claims. They appear to simply misread the statute.

Judge Reavley's concurrence in *Hess* made this point, quoting section 20(a) and arguing that the majority should have applied the presumption to the claimant's consequential heart condition. "Because [the claimant's] back injury indisputably arose out of his employment, any injury resulting from treatment for that injury should also be presumed to have arisen out of the employment and the primary injury." *Hess*, 543 F.3d at 764-65 (Reavley, J., concurring);[13] *see also Vickers*, 713 F.3d at 786-87 (Graves, J. concurring) (agreeing with Judge Reavley

---

[13] Although Judge Reavley found that the section 20(a) presumption should have attached to the claimant's alleged consequential heart condition, he concurred in the judgment because he found that the claimant had not made out a prima facie case with regard to that condition.

that the *Hess* majority improperly withheld the presumption for a claim based on

consequential injury). This Court should adopt Judge Reavley's reasoning, which

is consistent with the text of section 20(a).

> 2.    **The *Hess* and *Vickers* decisions are also inapposite because, unlike Stephenson, the claimants in those cases did not make effective claims for compensation based on a secondary injury.**

In addition to being wrongly decided, *Hess* and *Vickers* are inapposite. Both

decisions focus on the fact that the employees involved had not timely claimed an

entitlement to compensation for the secondary injuries at issue. In *Hess*, the

claimant filed a claim for back and groin injuries he sustained at work, but later

sought medical benefits for a heart condition, which he alleged arose from steroid

injections administered in treating his back injury. *Hess*, 543 F.3d at 758. The

court found that the presumption could not attach to the heart condition because the

claimant had not made a claim for it, and did not raise it until the ALJ hearing. *See*

Employer's Brief in *Hess*, 2007 WL 6179895 at 5 (pre-hearing statement does not

list heart problems or any doctors who treated heart problems). "Because the

statutory presumption applies only to the claim, and because the claim in this case

does not reference a work-related heart injury, the ALJ and Board erred in

applying it to [the claimant's] alleged heart condition." *Id*. at 761.[14] In *Vickers*,

---

[14] The court also noted that that there was no medical evidence to support the claimant's assertions that he had a heart condition. *Id*. at 758-59.

the court similarly refused to apply the presumption to an alleged autoimmine
disorder and gastrointestinal problems where the worker had claimed only an
injury to his arm.  713 F.3d at 785 (finding catchall statement in the claim for
"other . . . problems associated with [his arm] injury and working conditions in
Iraq" too vague to constitute a claim for the specific consequential injuries
alleged).

      Unlike the *Hess* and *Vickers* claimants, Stephenson made an effective claim
for medical expenses related to his T7 fracture as well as his COPD.  As the
Employer points out, Stephenson's claim form alleged an injury to his lungs [*i.e.*,
COPD] caused by the 2008 exposure to fumes, and did not specifically reference
the T7 fracture.  Emper's Brf. 24; JA 11.  But the formal rules of practice and
procedure applicable to civil matters do not apply to informal workers'
compensation proceedings under the Act.  The Supreme Court has recognized that
a Longshore Act claim need not even be made on a claim form, and that a
substitute is sufficient if it "identif[ies] the claimant, indicate[s] that a compensable
injury has occurred, and convey[s] the idea that compensation is expected."  *U.S.
Industries/Federal Sheet Metal, Inc. v. Director, OWCP*, 455 U.S. 608, 613 n.7
(1982) (quoting 3 A. Larson, The Law of Workmen's Compensation § 78.10, p.
15-9 (1976)).  It also recognized that "considerable liberality" is allowed in

25

amending claims, and that amendments are effective so long as the employer is not prejudiced. *Id.*; JA 221.[15]

As the Board ruled, the Employer was not prejudiced here. While Stephenson's 2012 claim form referenced only his 2008 respiratory injury, the Employer already knew that Stephenson was seeking additional medical benefits for treatment that he alleged was attributable to that injury. Indeed, the Employer contested Stephenson's claim 15 days before he even filed it, asserting that Stephenson's "medical treatment" was not related to the 2008 workplace incident. JA 9. As the Employer recognizes, the logical explanation for its filing of a notice of controversion before Stephenson filed his claim is that Stephenson had already requested that the Employer pay for his medical treatment, and the Employer had refused. *See* Emper's Brf. at 2 n.1. Only after the Employer refused (and formally controverted its liability), did Stephenson have reason to file his claim.

---

[15] *See Pool Co. v. Cooper*, 274 F.3d 173, 182-84 (5th Cir. 2001) (employee properly permitted to amend claim as to dates or categories of disability during ALJ hearing); *Meehan Seaway Service Co. v. Director, OWCP*, 125 F.3d 1163 (8th Cir. 1997) (cumulative trauma theory raised in pre-trial stipulation sufficiently amended claim); *Mikell v. Savannah Shipyard Co*., 24 BRBS 100 (1990), 1990 WL 28415 (1990), *aff'd on recon.*, 26 BRBS 32 (1992), *aff'd mem. sub nom.*, *Argonaut Ins. Co. v. Mikell*, 14 F.3d 58 (11th Cir. 1994) (new theory of basis for death benefits raised in amended pre-hearing statement sufficiently amended claim); *Dangerfield v. Todd Pacific Shipyards Corp*., 22 BRBS 104 (1989) (where claimant was treated for, and sought benefits for, back injury, section 20(a) properly applied to that injury even though it was not stated in initial claim).

Even if the Employer had not already been aware of the nature of the claim when the claim form was filed, it was again made aware at the May 15, 2012 informal conference – less than two months after the claim form was filed, and sixteen months before the ALJ hearing, JA 141 – when Stephenson expressly sought medical benefits for both his COPD and T7 fracture.  JA 12, 15.  Because the Employer knew – before Stephenson's claim form was filed – what the claim was for, and was again made aware at the informal conference, the Employer was not prejudiced by the fact that Stephenson's claim form did not specifically reference the T7 injury.  As the Board concluded, therefore, Stephenson sufficiently claimed medical benefits for the T7 fracture as well as his COPD.  JA 221.

> **3.** **The Supreme Court's *U.S. Industries* decision says nothing about whether the section 20(a) presumption applies to secondary injuries because there was no secondary injury in that case.**

The Employer's claim that its position is supported by *U.S. Industries*, 455 U.S. 608 (1982), is entirely unfounded.  Emper's Brf. 18-21.  Nowhere in that decision does the Court suggest, much less hold, that the 20(a) presumption is inapplicable to secondary injury claims.  Indeed, the case did not even involve a secondary injury.

In *U.S. Industries*, the claimant awoke on November 20, 1975, with severe pains in his neck, shoulders and arms.  455 U.S. at 609.  He filed a claim for

compensation, alleging that, the day before, he had injured himself while lifting

ductwork on the job. *Id*. at 610. The ALJ did not believe his testimony, found that

no workplace injury had occurred, and denied benefits. *Id*. The court of appeals

vacated the decision and remanded. It found that, even if no workplace injury had

occurred, the claimant had suffered an injury at home in bed on November 20, and

was entitled to the presumption that the bedroom attack of pain was "employment-

bred." *Id*. at 612; *Riley v. U.S. Industries/Federal Sheet Metal, Inc*., 627 F.2d 455,

458 (D.C. Cir. 1980). The Supreme Court reversed, finding that the claimant had

never filed a claim for a November 20 injury. And because the section 20(a)

presumption attaches to "the claim" – in which the claimant alleged only a

workplace injury on November 19 – the Court found that it could not attach to the

November 20 incident that occurred at home, for which the claimant had not

claimed compensation. *Id*. at 612-14.

The key finding in *U.S. Industries* is that there was not even a primary

workplace injury. The claimant alleged one, but the ALJ did not believe his

testimony. 455 U.S. at 616. In the absence of a primary injury, there could not

have been a consequential injury. *Id*. The only "injury" at issue in *U.S. Industries*,

therefore – the attack of pain the claimant experienced while lying in bed on

November 20 – was simply unrelated to the claimant's employment. *Id*. ("[T]he

claim envisioned by the Court of Appeals [for the November 20 attack of pain] did

28

not allege any facts that would establish that [the claimant] suffered an injury that arose in the course of employment.") *Id*. Thus, *U.S. Industries* held merely that the section 20(a) presumption could not attach to a *nonwork* injury.[16] It did not address consequential injuries at all, because it found that no workplace injury, and thus no consequential injury, had occurred. Its reasoning, therefore, cannot apply here, where there is no dispute that a workplace injury occurred, and Stephenson's claim is based on a consequential injury.

In sum, the plain language of section 20(a) applies a presumption to all claims for compensation under the Longshore Act. Nothing in the Employer's brief or the authorities it relies on gives any reason to ignore this plain language and limit the presumption only to primary injuries. Stephenson made an adequate compensation claim seeking medical benefits for his COPD and consequential T7 fracture. The ALJ's and Board's rulings that the 20(a) presumption applied to both aspects of Stephenson's claim should be affirmed.

---

[16] Indeed, the Court found that the claimant's experience of pain at home on November 20 was not an "injury" as defined in of the Act because it did not itself arise in the course of employment, and could not be connected to an injury that arose in the course of employment (because the ALJ found that no workplace injury had occurred). *U.S. Industries*, 455 U.S. at 615-16.

29

## II. THE ALJ DID NOT RELY ON DR. RIPOLL'S OPINIONS FOR INVOCATION OF THE PRESUMPTION WITH REGARD TO STEPHENSON'S COPD.

Unlike the T7 fracture, the Employer apparently concedes that the section 20(a) presumption could apply to Stephenson's COPD claim. Instead, it challenges the ALJ's weighing of the evidence in determining that Stephenson successfully invoked the presumption. Emper's Brf. 26-32. The argument is straightforward. The ALJ found Dr. Ripoll's various opinions – first that Stephenson's current COPD was aggravated by his workplace exposure, then that it was not, then that it was, and then that he was uncertain – insufficiently credible to *rebut* the section 20(a) presumption. *See* JA 205; *supra* at 11-12.. Therefore, argues the Employer, the ALJ should not have relied on Dr. Ripoll's testimony to find that Stephenson had *invoked* the presumption. Emper's Brf. at 28.

The problem with this argument is that the ALJ did not rely on Dr. Ripoll's opinions to in finding that Stephenson invoked the presumption. JA 203.[17] He simply found that the "Claimant has demonstrated and Employer has agreed that a work related injury occurred on February 18, 2008 when Claimant was exposed to welding and epoxy fumes, leading to an aggravation of his preexisting COPD." JA

---

[17] The Employer notes that the *Board* mentioned Dr. Ripoll's opinions in affirming the ALJ's finding that Stephenson invoked the presumption. Emper's Brf. at 29. It recognizes, however, that the ALJ did not rely on those opinions. *Id*. at 28. And as noted above, the Board found that Stephenson did not need a medical opinion to invoke the presumption with regard to his COPD, and found that the evidence he relied on was sufficient. *See supra* at n.8.

203.[18]  This is the correct standard.  *See Moore*, 126 F.3d at 262 ("an employee

seeking to have the benefit of the presumption must first allege (1) an injury or

death (2) that arose out of and in the course of (3) his maritime employment.").  In

any event, the Employer's argument that the ALJ relied on Dr. Ripoll's testimony

to invoke the presumption is simply wrong.

---

[18] While the Employer argues that it did not agree that the workplace incident
aggravated Stephenson's COPD, it is far from clear that the ALJ relied on the
stipulation for that point.  *See supra* at 10-11 and n.7.  Nor was the Employer's
agreement necessary.  The day after the incident, Stephenson was diagnosed with
"exacerbation of chronic obstructive pulmonary disease" and hospitalized for eight
days.  SJA 1.  That is sufficient evidence to establish the fact of his COPD
aggravation, whether the Employer stipulated to it or not (and whether the ALJ
actually found it had or not, *see infra* n.7).

## CONCLUSION

The Court should affirm the ALJ's and Board's decisions granting

Stephenson medical benefits.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

RAE ELLEN JAMES
Associate Solicitor

MARK REINHALTER
Counsel for Longshore

SEAN G. BAJKOWSKI
Counsel for Appellate Litigation

/s/ Matthew W. Boyle
MATTHEW W. BOYLE
Attorney
U.S. Department of Labor
200 Constitution Ave., N.W.,
Suite N-2117
Washington, D.C.  20210
(202) 693-5660
BLLS-SOL@dol.gov
boyle.matthew@dol.gov
Attorneys for the Director,
Office of Workers' Compensation
Programs

**CERTIFICATE OF COMPLIANCE**
Pursuant to Fed. R. App. P. 32(a)(7)(C)

I certify, pursuant to Fed. R. App. P. 32(a)(7)(C), that the attached brief for the Federal Respondent is proportionally spaced, was prepared in Microsoft Word Times New Roman 14-point typeface, and contains 7,482 words.

/s/ Matthew W. Boyle
MATTHEW W. BOYLE

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2016, the required copies of this Brief were served electronically, through the Court's CM/ECF system, on the following:

F. Nash Bilisoly, Esq.
Vandeventer Black, LLP
500 World Trade Center
101 W. Main St.
Norfolk, VA 23510
*Counsel for Metro Machine Corp.*

Gregory E. Camden
Montagna Klein Camden
425 Monticello Ave
Norfolk, VA 23510
*Counsel for Stephenson*

/s/ Matthew W. Boyle
MATTHEW W. BOYLE

33